## DENNIS VIRTUE v. CREAMERY PACKAGE MANUFACTURING COMPANY and Others.[1]

April 13, 1911.

Nos. 16,876, 16,877—(36, 37).

**Evidence upon two trials — judgment for defendant.**

In this an action for damages alleged to have been caused by the fraudulent withholding for three years from the market of a machine involving a patented device, and thereby depriving the owners of the beneficial use of such device, the evidence failed to establish that the patented device was of practical or commercial value, and failed to establish a fraudulent purpose to withhold the same from the market. The evidence on these points so appearing after two trials, the defendant is entitled to judgment.

[1]Reported in 130 N. W. 996.

[Note] As to injuries in getting on or off railroad train generally, see note in 21 L.R.A. 354.

As to time allowed passenger to alight, see notes in 4 L.R.A.(N.S.) 140 and 25 L.R.A.(N.S.) 217.

Action in the district court for Steele county against the Creamery Package Manufacturing Company, the Owatonna Manufacturing Company, Charles H. Higgs and Martin Deeg, to recover $90,000 damages caused the owners of a certain patented device, by depriving them of its use for three years under a written contract between Martin Deeg and plaintiff, as parties of the first part, and defendant Package Manufacturing Company and the Cornish, Curtis & Greene Manufacturing Company, as parties of the second part, which gave the second parties exclusive right to manufacture the machine containing the patented device. The substance of the complaint is stated in the third paragraph of the opinion. Martin Deeg intervened, and in his complaint in intervention adopted the allegations of plaintiff's complaint and alleged that he was entitled to one-half of all the damages claimed.

The separate answer of defendant Creamery Package Manufacturing Company admitted that the patent specified was issued from the patent office of the United States to said Virtue and Deeg, but denied that the alleged improvements in combined churns and butter workers described in the letters patent were or are new or useful, and denied that the improvements had not been known or used by others in this country prior to the issuance of the letters patent, and alleged that Virtue and Deeg were not the original inventors or discoverers of the improvements purporting to be covered by the letters patent, or of any material parts thereof, and that the improvements had been in public use and on sale in this country and elsewhere for more than two years prior to the application for the letters patent. The reply of the intervener denied the allegations of the answer mentioned and set up that because of the pleadings defendant was estopped from setting up those allegations.

The case was tried before Buckham, J., and a jury which returned a verdict in favor of plaintiff for $7,500. From an order denying defendant Package Manufacturing Company's motion for judgment notwithstanding the verdict or for a new trial, it appealed. From an order setting aside the verdict in favor of plaintiff and granting a new trial, plaintiff and intervener appealed. Order denying defendant's motion for judgment reversed, and case remanded, with instructions

to the lower court to vacate the order granting a new trial and to cause judgment to be entered for defendant.

*Cohen, Atwater & Shaw,* for defendant Package Manufacturing Company.

*Leach & Reigard* and *W. F. Sawyer,* for plaintiff and intervener.

SIMPSON, J.

January 22, 1900, the plaintiff and intervener entered into a contract with the defendant company and the Cornish, Curtis & Greene Manufacturing Company, of Fort Atkinson, Wisconsin. By the terms of this contract plaintiff and intervener gave said companies, for a term of three years, the exclusive right to make and sell a patented combined churn and butter worker, and in consideration thereof the said companies agreed to manufacture and sell such churns and pay the plaintiff and intervener a royalty thereon. The Cornish, Curtis & Greene Manufacturing Company was, at the time the contract was entered into, a name used by the defendant company, the corporation theretofore organized under that name having ceased to do business as an independent company.

After the execution of the contract, under the supervision and direction of the intervener, a combined churn and butter worker was constructed by the defendant. It was placed in a creamery to be tested. Upon the test the important part of the mechanical device designed to reverse the movement of the butter working rollers, being the part specifically covered by the patent referred to—the segmental rack—broke, preventing the further operation of the churn. Thereafter no other churn was constructed by the defendant company under this patent. In 1902 or 1903 plaintiff and intervener, on their own account and in their own factory, constructed a churn and butter worker under the Virtue-Deeg patent. Upon the test of this churn the same mechanism broke that had proved insufficient in the churn made by defendant. A heavier mechanism was then put on by the plaintiff, and thereafter the churn was operated successfully for three months. At the end of the three months the plaintiff replaced this churn—which was not thereafter

used—with one operated by a different mechanism, upon which plaintiff and one Hagedorn had secured a patent during the term of the contract with defendant. After the expiration of the three-year period covered by the contract above referred to, and up to the time this suit was brought, a period of more than five years, no other churns of the kind referred to in the contract with the defendant company were made by either the plaintiff or the intervener, nor was any effort thereafter made by either of them to procure the manufacture or sale of these churns by any other company.

This action is one in which the plaintiff and intervener seek to recover the damages caused to them by their being deprived of the use and benefit of their said patent for the three years covered by the contract. The complaint alleges that the defendant company, with the fraudulent intent not to perform its contract, and thereby to keep this churn out of the market, induced the plaintiff and intervener to enter into the above contract by falsely representing that the Cornish, Curtis & Greene Manufacturing Company was manufacturing and selling churns, had a large plant, and was in position to get one-third of the churn trade, and that it would thereby put the churn in competition with all other churns and butter workers, and, further, that the defendant company did not manufacture and sell the churns, as agreed, or attempt so to do. On the trial it appeared that the defendant owned the plant operated under the name of the Cornish, Curtis & Greene Manufacturing Company, as well as a plant operated under the name of the Fargo Company, and had a large trade in combined churns and butter workers.

The case has been twice submitted to a jury—the first time as an action for breach of contract. A verdict then returned was set aside, on the ground that the evidence was insufficient to sustain the verdict, and a new trial was granted. Upon the second trial, the plaintiff and intervener so electing, the case was tried and submitted as an action for fraud. The plaintiff had a verdict. The defendant made alternative motions for judgment or a new trial. The case is brought to this court on the defendant's appeal from an order made denying its motion for judgment, and on the separate appeals by the plaintiff and the intervener from an order made granting a new trial.

The damages which are sought to be recovered in this action resulted, if at all, to the plaintiff and intervener by their being deprived of the beneficial use of a valuable device and machine. This places on them, at the outset, the burden of establishing the value of the device and the machine constructed thereunder. The facts stated tend strongly to show that such device and machine had no practical or commercial value. The machine made at defendant's factory according to the patterns and under the direction of the intervener, as the evidence clearly shows, broke on its first test. The intervener, one of the patentees, decided, and so informed defendant, that the segmental gear, the important feature of the patented device, "wasn't really the right drive to reverse the rolls—it is too slow, takes too much of a strain," and he recommended the construction of a machine with a beveled gear, this being a device wholly different from the patented one specified in the contract. Soon after the making of the contract, both the plaintiff and intervener occupied themselves in planning other and different devices for doing the required work of a combined churn and butter worker. The plaintiff, in 1902, during the term of the contract, had put out a different machine under the Virtue-Hagedorn patent, and has manufactured and sold other churns and butter workers. The intervener had made several machines with a beveled gear and hand reverse of the butter working rolls, and at the time of the trial was about to apply for a patent on an automatic reverse in connection with a beveled gear. Neither by sales of machines built under the Virtue-Deeg patent, nor by the continued use of any such machines, nor by any sale of the patent right, has any practical or commercial value been shown in the Virtue-Deeg patent.

Under these conditions, expert evidence that the combined churn and butter worker operated by this patented device was of great value, while competent, was necessarily largely uncertain and conjectural. The proven treatment by the plaintiff and intervener of this device impeached their testimony that the machine was in fact of practical or commercial value. Three months' successive use of the machine by plaintiff after the strengthening of the segmental gear, in view of its subsequent abandonment, does not tend to show that

it was equal or superior to the other designs of churns and butter workers that were in general use throughout the country. The evidence submitted, failing to establish any practical or commercial value of the patented device, did not establish any basis for an award of damages in the case. A verdict that is arrived at by following improbable testimony into the realm of uncertainty and speculation, and ignoring the clearly established decisive facts in the case, must be set aside.

Within the issues made in this case, the representations as to the independent position of the Cornish, Curtis & Greene Manufacturing Company, the size of its plant, and its ability to control trade—in view of the conceded fact that the defendant company, which also executed the contract, was in a position equal or more favorable as to ability in these respects than the other company was represented to be—would only be material if connected with a purpose on the part of the defendant not to push the sale of the machine, but to withhold it from the market. Such an intent is, therefore, an essential element in the fraud charged. As stated, upon the trial it appeared that the defendant company was interested in and selling other types of machines, and that it failed to push the manufacture and sale of the Virtue-Deeg machine, and it is claimed that from this evidence such fraudulent intent may be inferred. But it is apparent that the value of this proof depends upon the question whether the Virtue-Deeg machine was equal or superior to other types of machines, and had, therefore, a commercial value. The evidence establishes that the machine constructed in defendant's factory, according to plaintiff's and intervener's plans and direction, broke when tested. While the contract with defendant contemplated the correction of weak parts which might develop in the machine, the defendant does not, in terms, undertake to originate or design such corrections. Nor does the contract, fairly construed, place such duty on the defendant company. The failure of the defendant company to make and sell the machine under its contract is so fully accounted for by the defects in and failure of the machine constructed under the direction of the plaintiff and intervener that no inference of a fraudulent purpose to withhold the machine from the market can be

drawn therefrom.   The trial court rightly determined that the evidence did not establish such fraudulent purpose.

Clearly there was ground for the trial court's order granting a new trial, if the defendant was not entitled to judgment.   The motion of defendant for judgment notwithstanding the verdict raises a closer question; but the case, as presented, within the rule announced in Cruikshank v. St. Paul Fire & Marine Ins. Co., 75 Minn. 266, 77 N. W. 958, entitled defendant to that relief.   The case has been twice tried.   After the first trial, the verdict was set aside because not justified by the evidence, and in his memorandum the exact point at which the evidence failed is indicated by the trial judge as follows:  "In the absence of a substantial showing that the churn in question was a valuable, marketable machine, that would have won its way in competition with numerous other churns already having an established reputation, there was no sufficient basis for any intelligent computation of damages for defendant's failure to put it on the market."

Upon the second trial the evidence again failed to establish that the machine had commercial value, and principally because of such failure a case of fraud was not made.   Upon this point the evidence is substantially conclusive against the case sought to be made by plaintiff and intervener.   It is not suggested that any different case can be made on another trial.   It appearing from the evidence that the cause of action sought to be made cannot, in point of substance, be established, the defendant should have judgment.

The order denying the motion of defendant Creamery Package Manufacturing Company for judgment is reversed, and the case remanded, with direction to the lower court to vacate the order granting a new trial and to cause judgment to be entered for defendant.